**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**CASE NO.: 6:17-cv-00714-PGB-TBS**

LORI COSTA

    Plaintiff,

v.

METROPOLITAN LIFE INSURANCE
COMPANY,

    Defendant.
_____/

**DEFENDANT METLIFE'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS
FROM BEACHSIDE LEGAL SERVICES, P.L.L.C F/K/A TURNER & COSTA PL**

Defendant, METROPOLITAN LIFE INSURANCE COMPANY ("MetLife"), pursuant to Federal Rules of Civil Procedure 26 and 45, and Local Rule 3.04, respectfully requests the entry of an order compelling the production of documents from Beachside Legal Services, P.L.L.C. f/k/a Turner & Costa, PL ("Beachside Legal") pursuant to MetLife's Subpoena to Testify at a Deposition *Duces Tecum*, dated January 22, 2018 ("Subpoena") (attached as **Exhibit 1**).

**I. Introduction & Factual Background**

This lawsuit involves a claim for disability benefits by Plaintiff, Lori Costa ("Costa"), under a MetLife individual disability insurance policy. The Complaint alleges that, in early 2010, Costa, an attorney, "noticed the gradual onset symptoms including balance issues, speech, coordination, fatigue, and weakness. They markedly worsened in 2015." *See* Complaint at § 7. Costa also alleged that she "began experiencing cognitive problems, including processing errors, slower processing, word errors, difficulty concentrating, and experiencing extreme dizziness",

1

which prevented her from performing the duties of a litigation attorney on or around September 23, 2015, when she ceased working at her law firm, Turner and Costa n/k/a Beachside Legal. *Id.* at §§ 8-12. During discovery (including Costa's deposition), however, MetLife uncovered various "non-medical" reasons for Costa's departure from her firm, which rebut her disability claims, including Costa's desire for a change in lifestyle to spend more time with her two (2) young children and the fact that her firm was having monetary problems, her partner, Scott Turner (the current principle in Beachside Legal), had taken 99% of the firm's profits to pay an outstanding IRS debt, leaving her with only 1% of the firm's income for that year. The discovery at issue relates directly to those defenses.

## II. Discovery Standard

The broad scope of discovery is well known. Rule 26(b)(1), Fed. R. Civ. P., provides:

> **(1)** *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

"The term 'relevant' in Rule 26 should encompass 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Dobruck v. Borders*, 8:16-CV-1869-T-33JSS, 2017 WL 417184, at *1 (M.D. Fla. Jan. 31, 2017), citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Additionally, Rule 401, Fed. R. Evid., provides that "[e]vidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action."

2

In addition, the scope of discovery under a subpoena is exceedingly broad and is the same as the scope of discovery under Rule 26(b). "The discovery provisions of the Federal Rules of Civil Procedure allow the parties to develop fully and crystallize concise factual issues for trial." *Callaway v. Papa John's USA, Inc.*, 09-61989-CIV-ZLOCH, 2010 WL 4024883, at *5 (S.D. Fla. Oct. 12, 2010) (citations omitted). Accordingly, discovery requests are to be broadly and liberally construed. *Id.*

### III. MetLife's Discovery Requests and Beachside Legal's Objections

On January 22, 2018, MetLife propounded a Subpoena to Testify at a Deposition *Duces Tecum* to Costa's former employer, Beachside Legal f/k/a Turner and Costa. On January 30, 2018, Beachside Legal served improper blanket objections to MetLife's *duces tecum* requests and attached a mere 28 pages of records responsive to MetLife's Subpoena, despite Costa's eight (8) years of employment, from approximately October of 2007 through September of 2015. A copy of Beachside Legal's Objections are attached as **Exhibit 2**; *see also* Costa Depo. 24:4-5; 100:12-13 (the pertinent portions of Costa's deposition cited herein are attached hereto and incorporated herein as **Exhibit 3**).

Pursuant to Local Rule 3.04(a), MetLife sets forth below its *duces tecum* requests, Beachside Legal's response/objections, and MetLife's arguments as to why the objections should be overruled. Beachside Legal's response and objections to each of MetLife's *duces tecum* requests are identical.

> **Request 2:** Any and all attendance records, timesheets, time cards, work schedules, work hours or shift schedules or other documents reflecting the hours/days worked by **Costa**.
>
> **Response: Objections as stated above**[1]

---

[1] For the Court's convenience, the following are the general objections from Beachside Legal:

> The same seeks information that is irrelevant, immaterial, not reasonably calculated to lead to discovery of admissible evidence, is too broad in scope and

3

***

**Request 8:** Any and all calendars, appointment books, registers and/or appointment logs (if applicable) pertaining to **Costa**.

**Response: Objections as stated above**

***

**Request 22:** All billing records for **Costa**.

**Response: Objections as stated above. However relevant general billable hours attached.**

**Request 23:** All records indicating daily time entries for **Costa**.

**Response: Objections as stated above**

---

time, and invades attorney client and work product privileges. Further, the subpoena seeks information from an entity, BEACHSIDE LEGAL SERVICES, P.L.L.C., of which Lori Costa and Turner and Costa, PL were never employed by, a part of, or in any way associated with and therefore is burdensome and harassing. The request seeks information as far back as 2008, and it is not believed that Lori Costa was a participant as an owner in a previous law firm. Turner and Costa, PL started in 2010 and terminated in 2016, and as such, the request for information after that date would be an abuse of subpoena. Beachside Legal Services, P.L.L.C. was not, is not, nor ever formerly known as (f/ k/a) Turner and Costa, PL.

Further, to the extent the same seeks any personal information of or from Scott A. Turner, Esquire, and Beachside Legal Service, P.L.L.C, the undesigned files these additional objections as the same is irrelevant, immaterial, not reasonably calculated to lead to discovery of admissible evidence, is burdensome, harassing and an abuse of subpoena power to seek personal and private individual information.

To the extent some of the information of Turner and Costa, PL may exist in some form, the same would require an estimated 150 hours of time to fully look into any and all closed files (to the extent they even exist in closed storage), look in any old computer systems (to the extent any old used/closed system even can be restored and recoverable) by paying some properly qualified technician, and to the extent any old client could be contacted to waive any privileged billing information. Beachside Legal Services, P.L.L.C. is a small firm of approximately 6 full time employees (1 full time attorney) and does not have the time or resources to be harassed into looking for and providing a response, to the extent the information is even available. I am the sole owner of Beachside Legal Services, P.L.L.C. and attest that it is a burden to even prepare this response. I had to discontinue my legal duties to my clients to be forced to respond to this in an appropriate and proper manner.

**Request 24:** All income records for **[Beachside Legal]**.

**Response: Objections as stated above**

**MetLife's Reasons for Compelling Requests 2, 8, 22 - 24:**

MetLife is entitled to the full discovery permitted under the Federal Rules of Civil Procedure, as it directly relates to the central issue in this case: the reason Costa stopped working at Turner & Costa. MetLife intends to present evidence at trial that her leaving her job was a voluntary lifestyle change. At deposition, Costa stated that in 2014 she billed approximately 2,600 hours and, prior to her departure in September of 2015, she billed approximately 2,000 hours. *See* Costa Dep. 126: 17-23; 154:22-25 – 155:1; 260:1-5. She further stated that having two boys, ages four (4) and one (1), at home and billing 2,600 hours in 2014 was a stressful situation. Costa Dep. 192:22-25. Despite claiming that she left work because of illness, the same month she went out on medical leave, Costa traveled to Boston to see a New England Patriots game. Costa Dep. 210:9-25 – 211:1-24. Moreover, since her departure from her firm, she takes monthly visits to Disney World with her family. Costa Dep. 161:1-13.

Because the central issue in this case is determining the reason Costa left her employment at Turner and Costa n/k/a Beachside Legal, MetLife requested that Beachside Legal produce her attendance records, timesheets, time cards, daily time entries, billing and income records, work schedules, work hours or shift schedules, calendars, appointment books, and registers and/or appointment logs or other documents reflecting the hours/days worked by Costa.

In response, Beachside Legal asserts that the Subpoena "seeks information from an entity, [Beachside Legal], of which Lori Costa and Turner and Costa, PL were never employed by, a part of, or in any way associated with and therefore is burdensome and harassing." The notion that Costa was never employed by, a part of, or otherwise associated with Beachside

Legal is expressly refuted by the record evidence clearly showing that Beachside Legal Services, P.L.L.C and Turner & Costa, PL are one and the same entity. Specifically, one of the few documents disclosed by Beachside Legal, *i.e.*, an April 1, 2016 memorandum from Mr. Turner to the firm, states that "[t]he firm will change names….Lets all pitch in (as you all have so far) in making the transition to a new firm name as easy and professional as possible." A copy of the April 1, 2016 correspondence is attached as **Exhibit 4**. In addition, a review of Florida's Department of State, Division of Corporations' corporate records for Turner & Costa P.L. reflect an amendment and name change as of April 18, 2016 to Beachside Legal Services, P.L.L.C. A copy of the Articles of Amendment to Articles of Organization is attached hereto as **Exhibit 5**.

Moreover, Beachside Legal asserts blanket general objections to the Subpoena including that the requests are irrelevant, immaterial, overly broad in scope and time, invasive of the attorney client and work product privileges, and not reasonably calculated to lead to the discovery of admissible evidence.[2] In addition, Beachside Legal asserted that full compliance with the Subpoena would require an estimated 150 hours of time to "fully look into any and all closed files … look in any old computer systems … by paying some properly qualified technician, and to the extent any old client could be contacted to waive any privileged billing information."

From the outset, objections which state that a discovery request is "vague, overly broad, or unduly burdensome" are, by themselves, meaningless, and are deemed without merit. A party properly objecting on these bases must explain the specific and particular ways in which a request is vague, overly broad, or unduly burdensome. *See Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 695 (S.D. Fla. 2007). Moreover, "[d]iscovery should ordinarily be allowed unless it

---

[2] Beachside Legal's objection that the items requested in the Subpoena are "not reasonably calculated to lead to the discovery of admissible evidence" is no longer an acceptable objection pursuant to the current version of Federal Rule of Civil Procedure 26.

6

is clear that the information sought has no possible bearing on the claims and defenses of the parties or otherwise on the subject matter of the action." *Id.* at 696.

Given the extensive hours billed, family needs and stressors and the active excursions with her family upon her departure from her employment, the information sought in Requests 2, 8, 22 - 24 are clearly relevant to the key issue of whether Costa left her employment at Turner and Costa n/k/a Beachside Legal based on her alleged disability or other "non-medical" reasons. At her deposition, Costa stated that her billable hours were tracked by the firm in a computer program known as Timeslips and converted into pre-bills to be transmitted to the clients. Costa Dep. 49: 10-24. Given that the records were kept electronically, according to Costa, there is zero burden or expense to Beachside Legal in providing MetLife with the records. Further, it is difficult to believe that the documents require 150 hours to locate and produce when Beachside Legal apparently was formed less than two (2) years ago, as asserted by Beachside Legal in its objections.

Moreover, MetLife's requests are narrowly tailored in time going back only two (2) years prior to Plaintiff's alleged onset of symptoms and are clearly relevant and material to determine the validity of Plaintiff's claims that she is unable to perform her duties as a litigation attorney.

Beachside Legal's claim that the documents requested by MetLife in the subpoena "invades attorney client and work product privileges" is also unavailing and must be overruled. With respect to claims of attorney-client and work product privileges, the burden of establishing such privileges rests on the party claiming it. *See United States v. Schaltenbrand,* 930 F.2d 1554, 1562 (11th Cir.1991) (applying rule for attorney-client issue); *Essex Builders Group, Inc. v. Amerisure Insurance Company,* No. 6:04–CV–1838–Orl–22JGG, 2006 WL 1733857 at *2 (M.D. Fla. June 20, 2006) (citing *Grand Jury Proceedings v. United States,* 156 F.3d 1038, 1042

(10th Cir.1998)) ("the party asserting work product privilege has the burden of showing the applicability of the doctrine"); *Ameritrust Co., N.A. v. White,* 1993 WL 819124, *3 (N.D.Ga. Oct. 20, 1993), ("[t]he mere conclusory assertion that material sought is covered by ... work product privilege is not sufficient to render such material undiscoverable.").

Moreover, a lawyer's time records generally are not privileged. *See Federal Trade Comm'n v. Cambridge Exchange*, 845 F. Supp. 872, 874 (S.D. Fla. 1993); *United States v. Leventhal*, 961 F. 2d 936, 940 (11th Cir. 1992). Courts have specifically held that "billing records, hourly statements, and fee arrangements which do not reveal client communications are not protected by the attorney-client privilege." *Federal Trade Comm'n v. Cambridge Exchange*, 845 F. Supp. at 873; *see also In re Grand Jury Proceedings 88-9*, 899 F.2d 1039, 1043 (11th Cir. 1990); *P & B Marina, Ltd. Partnership v. Logrande*, 136 F.R.D. 50 (E.D.N.Y. 1991), aff'd, 983 F.2d 1047 (2d Cir. 1992).

Here, MetLife does not seek client communications or Costa's mental impressions and strategy concerning litigation; rather, MetLife seeks information necessary to assess Costa's disability claim and any "non-medical" reasons for her departure. There is no danger that the disclosure of the documents requested would reveal any "trial strategy" prejudicial to Beachside Legal as contemplated by the law governing when portions of attorney time records may be privileged. In the event there truly are privileged materials reflected in the time records, the Court should order production of records with privileged materials redacted, along with a privilege log, or alternatively, MetLife would agree to enter into a confidentiality agreement.

> **Request 10:** All documents concerning financial reports, profitability reports, billing reports, billing records for **[Beachside Legal]** and/or **Costa** (or such documents that include **Costa**) during the Relevant Period.
>
> **Response: Objections as stated above.**

8

***

**Request 12:** Any and all Internal Revenue Service Forms, Corporate/Business, Employment and/or Individual Federal Income Tax Returns (including all supporting schedules and attachments), 1099 forms, W-2 forms, W-4 forms, K-1 forms, quarterly returns (if applicable), any and all income tax and employment tax returns or all other tax returns, attachments to tax returns, forms and schedules for **[Beachside Legal]**.

**Response: Objections as stated above**

**MetLife's Reasons for Compelling Requests 10, 12:**

The Court should overrule Beachside Legal's blanket general objections because documentation concerning financial reports, profitability reports, billing reports, billing records and tax information for Turner and Costa n/k/a Beachside Legal immediately prior to her onset of symptoms in 2010 are clearly relevant to whether Plaintiff is totally disabled and whether other underlying reasons relating to the Firm's financial issues and partnership profit sharing and salary splits were the real reasons for her employment departure. Costa testified that both her law firm and Scott Turner had various monetary and tax issues that affected Costa's partnership interest and caused her income to drop precipitately, likely contributing to her departure from the firm for reasons unrelated to her alleged medical condition. *See* Costa Dep. 148:18-25 – 154:1-14 (testimony regarding Beachside Legal's and Mr. Turner's IRS tax audit and financial issues requiring taking money from the firm to pay back taxes in either 2013 or 2014); Costa Dep. 50:7-20; 137:25 – 143:1-10 (testimony regarding salary and profit sharing during Mr. Turner's and Costa's 50/50 partnership; in 2009 Costa's salary was between $100,000 and $200,000 but dropped to approximately $80,000 in 2014. In addition, in 2012 Costa's profit share was 21.77 percent while Turner's was 78.23 percent; in 2014 her profit share dropped to 1.5 percent despite

9

being a 50/50 partner); Costa Dep. 90:22-25; 91:1-14 (testimony regarding dispute over profit split over trial verdict).

Further, as MetLife's requests are narrowly tailored in time going back only two (2) years prior to Plaintiff's alleged onset of symptoms, the records should be disclosed.

> **Request 11:** All pay statements or other documents that reflect the amounts paid to **Costa** by **[Beachside Legal]** and/or rates of pay received by **Costa** during the Relevant Period. This includes all salary, bonuses, and production bonuses.
>
> **Response: Objections as stated above, however to Lori Costa attached, as to the extent available.**

**MetLife's Reasons for Compelling Request 11:**

With respect to Beachside Legal's objection to producing documents responsive to *duces tecum* request 11, MetLife respectfully requests that the Court overrule said objections for the reasons set forth above (as to *duces tecum* requests 2, 8, 10, 12, 22 – 24).

Additionally, the Court should overrule Plaintiff's relevancy objection because information regarding earned income is relevant to whether Plaintiff is in fact disabled or left her employment for other reasons. Costa testified that in 2008 and 2009 she was making over $100,000 in income as an associate. Costa Dep. 50:7-20. In 2010, Costa made partner and her income rose in 2012 to approximately $201,000 plus guaranteed payments of $83,000. Costa Dep. 144:17-24. Then, in 2014, despite billing approximately 2,600 hours her income dramatically decline to approximately $82,000.00. *Id.* She further admits that she believes Mr. Turner was unfair in her compensation and complained to him once or twice about it. Costa Dep. 209:18-22. Beachside Legal should therefore be compelled to search for and produce more complete records responsive to the Subpoena.

**Request 19:** Produce documents sufficient to identify the names of the personnel employed by **[Beachside Legal]** who worked with **Costa** during the Relevant Period.

**Response: Objections as stated above**

**MetLife's Reasons for Compelling Request 19:**

With respect to Beachside Legal's objection to producing documents responsive to *duces tecum* request 19, MetLife respectfully requests that the Court overrule said objections for the reasons set forth above (as to *duces tecum* requests 2, 8, 22 – 24).

Additionally, this request is relevant because documents sufficient to identify the names of the personnel employed by Beachside Legal during Costa's employment will afford MetLife the opportunity to further investigate Plaintiff's disability claim and whether Costa's departure from her employment was in fact based on "non-medical" reasons. During the conferral meeting with Scott Turner of Beachside Legal, he stated he would not disclose records without Court order relating to former employees. However, such information is not privileged or otherwise undiscoverable and may not be withheld on that basis. Further, to date, Beachside Legal has failed to even disclose information as to employees still employed with Beachside Legal responsive to the request.

## CONCLUSION

WHEREFORE, based on the foregoing reasons, Defendant, METROPOLITAN LIFE INSURANCE COMPANY, respectfully requests the Court:

(1) overrule Non-Party, BEACHSIDE LEGAL SERVICES, P.L.L.C.'s Objection to Subpoena *Duces Tecum*, dated January 30, 2018;

(2) compel BEACHSIDE LEGAL SERVICES, P.L.L.C to provide information and documents responsive to the discovery requests identified above; and

(3) for such other and further relief this Court deems just and proper.

## Local Rule 3.01(g) Certification of Good Faith Conferral

MetLife's counsel certifies that Dana Chaaban, Esq. conferred with Mr. Turner on behalf of Beachside Legal on February 6, 2018 regarding the relief requested in this Motion but the parties were unable to resolve all of the issues in this dispute without Court assistance.

Respectfully Submitted**,**

**SHUTTS & BOWEN LLP**
*Attorneys for Defendant, MetLife*
200 S. Biscayne Boulevard
Suite 4100
Miami, Florida 33131
Tel: (305) 358-6300
Fax: (305) 381-9982

By: */s/ Dana Chaaban*
John E. Meagher
Florida Bar No. 511099
jmeagher@shutts.com
Jeffrey M. Landau
Florida Bar No. 863777
jlandau@shutts.com
Dana Chaaban
Florida Bar No. 111922
dchaaban@shutts.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 2, 2018, I filed the foregoing document with the Clerk of Court. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or via US Mail, an authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                        **SHUTTS & BOWEN LLP**

                                        */s/ Dana Chaaban*
                                        **DANA CHAABAN, ESQ.**

**SERVICE LIST**

*Lori Costa v. Metropolitan Life Insurance Company*
**United States District Court, Middle District of Florida**
**Orlando Division**
*Case No.: 6:17-cv-00714-GKS-TBS*

John V. Tucker, Esq.
Amy Ray, Esq.
Tucker & Ludin, P.A.
5235 16th Street North
St. Petersburg, FL 33703
T: (727) 572-5000
F: (727) 571-1415
*Tucker@Tuckerludin.com*
*Ray@Tuckerludin.com*
Attorneys for Plaintiff


Scott A. Turner, Esq.
Beachside Legal Services, P.L.L.C.
1180 Highway A1A
Satellite Beach, FL 32937
STurner@BeachsideLegal.com
EFiling@BeachsideLegal.com
angie@beachsidelegal.com
*Via electronic and U.S. postal mail*

MIADOCS 16082468 1