UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LORI COSTA,

    Plaintiff,

v.                                        Case No: 6:17-cv-714-Orl-40TBS

METROPOLITAN LIFE INSURANCE
COMPANY,

    Defendant.

## ORDER

This case comes before the Court without a hearing on the following motions papers:

- Defendant Metropolitan Life Insurance Company's Motion to Compel Production of Documents from Beachside Legal Services, P.L.L.C. f/k/a Turner & Costa P.L. (Doc. 55);

- Non-Party's Objection and Response to Defendant Metlife's Motion to Compel Production of Documents from Beachside Legal Services, P.L.L.C. f/k/a Turner & Costa P.L. (Doc. 59);

- Metlife's Motion to Overrule Non-Parties Beachside Legal Services, P.L.L.C.'s and Scott A. Turner's Objections to Metlife's Subpoena to Produce Documents, Information or Objects in a Civil Action and Compel Production of Documents from Leslie A. McElhinney, CPA, P.A. (Doc. 60); and

- Non-Party's Response to Defendant Metlife's Motion to Overrule Non-Parties Beachside Legal Services, P.L.L.C.'s and Scott A. Turner's Objections to Metlife's Subpoena to Produce Documents, Information or Objects in a Civil Action and Compel Production of Documents from Leslie A. McElhinney, CPA, P.A. (Doc. 61).

Plaintiff Lori Costa is a lawyer (Doc. 1, ¶ 6). She began working for attorney Scott Turner in October 2007, and in 2010, she became a partner in the firm, which at some point, changed its name to Turner & Costa P.L. (Doc. 55-3 at 3, 5; Doc. 59-1, ¶ 9). In

2010, Costa began having issues with her balance, speech, coordination, fatigue and weakness (Doc. 2, ¶ 7). By 2015 she was experiencing cognitive problems including processing errors, difficulty concentrating and dizziness (Id., ¶ 8). Costa's treating neurologist opined that her symptoms suggested Multiple Sclerosis (Id., ¶ 10). Costa claims that her condition forced her to stop practicing law in September 2015 (Id., ¶ 11). Costa has disability insurance through Metlife and in October 2015, she made a claim for benefits under the policy (Id., ¶¶ 3, 13).

In April 2016, Turner sent an email to all firm employees informing them that Costa would not be returning to work and that the name of the firm would be changing (Doc. 55-4). He also submitted Articles of Amendment to the Florida Division of Corporations to document the change in the firm name from Turner & Costa, P.L. to Beachside Legal Services P.L.L.C. (Doc. 55-5). The Articles of Amendment show the removal of Costa as a manager of the company (Id.).

Metlife denied coverage and in March 2017, Costa filed this lawsuit in state court alleging breach of the policy and violation of FLA. STAT. § 624.155 (Doc. 2). Metlife removed the case to this Court based upon diversity jurisdiction (Doc. 1), and filed an answer denying liability (Doc. 24). The only affirmative defense Metlife has pled is failure to state a cause of action for which relief can be granted (Doc. 24).

During her August 2017 deposition, Costa was asked about the financial performance of Turner & Costa and her own compensation while working at the firm (Doc. 55-3). Costa testified that in 2012, she received 21.77 percent of the firm's profits; in 2013, she received 19.77 percent of the profits; and in 2014, despite billing 2,600 hours, she received 1.5 percent of the firm profits (Id., at 10-11, 14). Costa explained that the 2014 decrease in her compensation was due to Turner's need for money to settle an

Internal Revenue Service claim (Id., at 13). Based on this information, Metlife suggests Costa had a non-medical reason for leaving Turner & Costa, i.e., that the firm was having financial problems (Doc. 60 at 4-5).

In October 2017, Metlife subpoenaed documents concerning Costa, Turner & Costa, and other entities from Leslie A. McElhinney, CPA, P.A. (Doc. 60-1). Apparently, McElhinney has provided accounting services to Turner & Costa and Beachside Legal (Doc. 61). The Court is unaware of any objection by McElhinney to the subpoena. However, Beachside Legal and Turner did file a timely objection (Doc. 60-3).

In January 2018, Metlife subpoenaed Beachside Legal for a deposition *duces tecum* (Doc. 55 at 3). Beachside Legal responded by producing 28 pages of information and otherwise objected to the subpoena (Id.). The day before the deposition was scheduled to occur, it was cancelled by Metlife (Doc. 59 at 2).

Now, Metlife seeks an order compelling Beachside Legal to produce certain documents and information, and an order overruling Beachside Legal and Turner's objections to the subpoena served on McElhinney (Docs. 55, 60). Beachside Legal and Turner oppose both motions (Docs. 59, 61). McElhinney has not appeared in the case.

Federal Rule of Civil Procedure 45 provides that parties may issue subpoenas commanding non-parties to, *inter alia*, produce documents, and appear and testify at depositions. The scope of discovery under Rule 45 is the same as the scope of discovery under FED. R. CIV. P. 26. Baptiste v. Ctrs., Inc., No. 5:13-civ-71-Oc-22PRL, 2013 WL 3196758, at *2 (M.D. Fla. June 21, 2013); see also Chambers v. Sygma Network, Inc., Case No. 6:12-cv-1802-Orl-37TBS, 2013 WL 1775046, at *3 (M.D. Fla. April 25, 2013) (quoting Rule 26(b)(1) and applying to a Rule 45 subpoena dispute); Madeline LLC v. Street, No. 09-80705-MC, 2009 WL 1563526, at *1 (S.D. Fla. June 3, 2009) ("Rule 45

must be read in conjunction with [Rule] 26, because the latter rule 'clearly defines the scope of discovery for all discovery devices.'") (citations omitted). Under Rule 26, unless the Court enters an order limiting discovery,

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1).

On a motion to compel, the party desiring to enforce a subpoena bears the burden of demonstrating that the information it seeks is relevant. Fadalla v. Life Auto. Prods., Inc., 258 F.R.D. 501, 504 (M.D. Fla. 2007); Connectus LLC v. Ampush Media, Inc., Case No. 8:16-mc-00159-VMC-JSS, 2017 WL 385758, *2 (M.D. Fla Jan. 27, 2017). Rule 26's requirement that discovery be relevant "'signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.'" Builders Flooring Connection, LLC v. Brown Chambless Architects, No. 2:11CV373-MHT, 2014 WL 1765102, at *1 (M.D. Ala. May 1, 2014) (quoting GAP Report of Advisory Committee to 2000 amendments to Rule 26). "As the Advisory Committee Notes say, '[t]he Committee intends that the parties and the court focus on the actual claims and defenses involved in the action.'" Liese v. Indian River Cty. Hosp. Dist., 701 F.3d 334, 355 (11th Cir. 2012) (quoting the GAP Report).

Metlife seeks an order compelling Beachside Legal to produce the following

information:

>Request 2: Any and all attendance records, timesheets, time cards, work schedules, work hours or shift schedules or other documents reflecting the hours/days worked by Costa.

>Request 8: Any and all calendars, appointment books, registers and/or appointment logs (if applicable) pertaining to Costa.

>Request 10: All documents concerning financial reports, profitability reports, billing reports, billing records for [Beachside Legal] and/or Costa (or such documents that include Costa) during the Relevant Period.[1]

>Request 11: All pay statements or other documents that reflect the amounts paid to Costa by [Beachside Legal] and/or rates of pay received by Costa during the Relevant Period. This includes all salary, bonuses, and production bonuses.

>Request 12: Any and all Internal Revenue Service Forms, Corporate/Business, Employment and/or Individual Federal Income Tax Returns (including all supporting schedules and attachments), 1099 forms, W-2 forms, W-4 forms, K-1 forms, quarterly returns (if applicable), any and all income tax and employment tax returns or all other tax returns, attachments to tax returns, forms and schedules for [Beachside Legal].

>Request 19: Produce documents sufficient to identify the names of the personnel employed by [Beachside Legal] who worked with Costa during the Relevant Period.

>Request 22: All billing records for Costa.

>Request 23: All records indicating daily time entries for Costa.

>Request 24: All income records for [Beachside Legal].

(Doc. 55 at 3-11). Metlife contends that this information is central to understanding why Costa left Turner & Costa, P.L. (Id. at 5).

---

[1] In the subpoena, Metlife defines the "Relevant Period" as the period from 2008 to the present day (Doc. 55-1 at 5). The Court finds this to be overbroad since Costa stopped practicing law in September 2015.

Beachside Legal argues that the motion to compel should be denied because when Metlife cancelled the deposition *duces tecum*, it mooted the subpoena (Doc. 59 at 2). While the deposition was cancelled, the dispute over production of the documents is still outstanding, has been briefed, and is due to be resolved.

Beachside Legal asserts that it has never been known as Turner & Costa, P.L., and that Costa has never had an interest in Beachside Legal (Doc. 59 at 4). Although the unverified Florida Division of Corporations documents show that Beachside Legal resulted from an amendment to Turner & Costa, Beachside Legal represents that Turner & Costa was ended, and that Beachside Legal is a newly formed, totally separate legal entity (Doc. 59). The Court need not decide whether Metlife or Beachside Legal's version of what occurred is accurate. Beachside Legal does not deny possession, custody or control of the information Metlife seeks (Doc. 59 at 4; Doc. 59-1) and that is all that is necessary to enforce the subpoena. FED. R. CIV. P. 45(a)(1)(A)(iii), (a)(1)(D) (Parties may subpoena documents, electronically stored information or tangible things in a non–party's possession, custody, or control for inspection, copying, testing, or sampling).

Beachside Legal also argues that the information Metlife seeks is confidential, attorney-client privileged and/or protected by the work product doctrine (Doc. 59 at 7-8). When, as here, the Court's jurisdiction is based on diversity, state law controls the substantive issue of attorney-client privilege and federal law controls the procedural issue of work product protection. Guarantee Ins. Co. v. Heffernan Ins. Brokers, Inc., 300 F.R.D. 590, 593 (S.D. Fla. 2014); Milinazzo v. State Farm Ins. Co., 247 F.R.D. 691, 698-99 (S.D. Fla. 2007). Under Florida law "[a] client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the

rendition of legal services to the client." FLA. STAT. § 90.502(2). "The purpose of the attorney-client privilege is to encourage clients to make full disclosure to their attorneys." Fisher v. United States, 425 U.S. 391, 403 (1976). "However, the privilege 'protects only those disclosures necessary to obtain informed legal advice.'" Genovese v. Provident Life and Accident Ins. Co., 74 So. 3d 1064, 1067 (Fla. 2011) (quoting Fisher, 425 U.S. at 403). Thus, "not all communications between lawyer and client are deemed privileged." Skorman v. Hovnanian of Fla., Inc., 382 So. 2d 1376, 1377 (Fla. 4th DCA 1980). The burden of establishing the attorney-client privilege under Florida law is on the person asserting the privilege. Lender Processing Servs., Inc. v. Arch Ins. Co., 183 So. 3d 1052, 2015 WL 1809318, at *5 (Fla. 1st DCA 2015).

To qualify for work product protection, "the primary motivating purpose behind the creation of the document" must be to aid in possible future litigation. U.S. v. Davis, 636 F.2d 1028, 1040 (5th Cir. 1981).[2] Rule 26 address the work product privilege:

> (A) *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
>     (i) they are otherwise discoverable under Rule 26(b)(1); and
>
>     (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) *Protection Against Disclosure*. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981), the court held that decisions of the Fifth Circuit Court of Appeal that existed on September 30, 1981, and that were handed down prior to the close of business that day, are binding precedent in the Eleventh Circuit.

>     a party's attorney or other representative concerning the
>     litigation.

FED. R. CIV. P. 26(b)(3)(A), (B).

Beachside Legal has not shown that the information Metlife subpoenaed is protected by the attorney-client privilege or work product doctrine. In the absence of contradictory proof, the Court proceeds on the basis that attorney time records, calendars, pre-bills and bills to clients are an integral part of the mechanics of running a law firm. But, they are not customarily prepared to document privileged communications from clients, to give legal advice to clients, or to memorialize attorney thoughts and impressions made in anticipation of litigation. The Court also notes that Beachside Legal has not produced a privilege log, filed a motion to quash the subpoena or a motion for a protective order. And, to the extent Beachside Legal claims that the information sought is confidential, it has not cited legal authority holding that confidential information is not discoverable. Nothing prevents the parties and Beachside Legal from executing a confidentiality agreement to protect confidential information produced in discovery.

Still, Beachside Legal argues that the subpoena is unduly burdensome and compliance will require 150 hours of attorney time at $450 per hour (Doc. 59-1, ¶ 4). A nonparty may object and move to quash a subpoena on the ground that it imposes an undue burden. FED. R. CIV. P. 45(d)(3)(A)(iv). The burden is on the nonparty to make this showing. Fadalla, 258 F.R.D. at 504; Malibu Media, LLC v. Doe, No. 8:14-cv-2352-T-36AEP, 2015 WL 574274, at *3 (M.D. Fla. Feb. 11, 2015) (citing Indep. Mktg. Group, Inc. v. Keen, No. 3:11-cv-447-J-25MCR, 2012 WL 512948, at *2 (M.D. Fla. Feb. 16, 2012)). In deciding whether a subpoena imposes an undue burden courts balance the requesting party's need for the discovery against the burden imposed on the subpoenaed party.

Fadalla, 258 F.R.D. at 504. Factors courts consider when performing this balancing test include: (1) the relevance of the information requested; (2) the need of the requesting party for its production; (3) the breadth of the request for production; (4) the time period covered by the subpoena; (5) the particularity with which the subpoena describes the requested production; and (6) the burden imposed on the subpoenaed party. Schaaf v. SmithKline Beecham Corp., No. 3:06-cv-120-J-25TEM, 2006 WL 2246146, *2 (M.D. Fla. Aug. 4, 2006). "[T]he status of the person as a non-party is a factor often weighing against disclosure." Id., at *2; FED. R. CIV. P. 45(d)(3)(A)(iii)-(iv), (B)(i).

The subpoena to Beachside Legal is overly broad and imposes an undue burden on it. First, since Costa stopped practicing law in September of 2015, the Court fails to understand why financial information covering any period after that date is relevant to this controversy. Second, Beachside Legal's claim concerning the effort that would be required to comply with the subpoena is unrebutted. Third, Metlife's explanation why it needs the information is not based on any claim or defense raised in the pleadings. Fourth, Costa was not a partner during the entire period of time covered by the subpoena. Fifth, and most importantly, the issue in the case is not why Costa left Turner & Costa. The issue is whether Costa's alleged illness prevents her from performing the material and substantial duties of a litigation attorney (Doc. 2, ¶ 11). Regardless of why Costa left her firm, if she can still do the work of a litigation attorney then she is not disabled for purposes of the Metlife policy; by like token, if she cannot do the work, then she is disabled.

In addition to the questionable relevance of the information Metlife seeks is the issue, not argued by Beachside Legal or Turner, of the lack of proportionality of the

information sought to the needs of the case.³ Assuming relevance, Metlife's demand for "all" or "any and all" documents described in categories 2, 8, 10, 11, 23 and 24 of the subpoena is disproportional to what is necessary here. Metlife should more appropriately have asked for (a) information sufficient to show the number of billable hours Costa worked as a partner, (b) the amount realized on the work she originated and/or performed as a partner, (c) the overhead allocated to her, and (d) the amounts she was paid as a partner in the firm. The Court fails to see what more Metlife would need to take discovery on its theory.

For all of these reasons, the motion to compel is **DENIED**.

---

³ Rule 26 requires that discovery be proportional to the needs of the case. In making this determination, the Court is guided by the non-exclusive list of factors in Rule 26(b)(1). "Any application of the proportionality factors must start with the actual claims and defenses in the case, and a consideration of how and to what degree the requested discovery bears on those claims and defenses." Graham & Co., LLC v. Liberty Mut. Fire Ins. Co., No. 2:14-cv-2148-JHH, 2016 WL 1319697, at *3 (N.D. Ala. April 5, 2016) (quoting Witt v. GC Servs. Ltd. P'ship, 307 F.R.D. 554, 569 (D. Colo. 2014)). In discussing proportionality and the discovery of ESI, the Middle District's Discovery Handbook cites the following principles of proportionality published by The Sedona Conference:

> 1. The burdens and costs of preserving relevant electronically stored information should be weighed against the potential value and uniqueness of the information when determining the appropriate scope of preservation.
>
> 2. Discovery should focus on the needs of the case and generally be obtained from the most convenient, least burdensome and least expensive resource.
>
> 3. Undue burden, expense, or delay resulting from a party's action or inaction should be weighed against that party.
>
> 4. The application of proportionality should be based on information rather than speculation.
>
> 5. Nonmonetary factors should be considered in the proportionality analysis.
>
> 6. Technologies to reduce cost and burden should be considered in the proportionality analysis.

Middle District Discovery (2015) at 24 (citing The Sedona Conference: Commentary on Proportionality in Electronic Discovery, 11 Sedona Conf. J. 289 (2010)).

The subpoena Metlife served on McElhinney seeks:

> Any and all documents, materials or information, papers of any king relating to, pertaining to, or concerning, mentioning, with record or knowledge of Lori Costa ("Costa") and/or "Entities" and/or other corporation, company, partnership, business entity, professional association and /or intellectual property that she currently owns, previously owned, created, operated and/or had any equity interest, relationship and/or involvement with from 2008 through the present date.

(Doc. 60-1 at 6). Metlife then adds ten categories of documents including: "1. All Documents Concerning Costa during the Relevant Period" and "2. All Documents Concerning the Entities during the Relevant Period." (Id., at 6). Costa has not objected to this subpoena.

Beachside Legal and Turner have not attempted to demonstrate that they have standing to object to the McElhinney subpoena. Still, because they claim a "personal right or privilege" in certain of the information sought, the Court finds that they have standing to object to some of the categories of information. Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc., 231 F.R.D. 426, 428-29 (M.D. Fla. 2005) ("The law governing courts in the Eleventh Circuit, however, is somewhat broader, and standing exists if the party alleges a 'personal right or privilege' with respect to the subpoenas.).

For the same reasons why the Court denied Metlife's motion to compel the subpoena to Beachside Legal, it also **DENIES in part**, Metlife' s motion to overrule non-party objections. Beachside Legal and Turner's[4] objections to the production of their information in the possession or control of McElhinney are **SUSTAINED**. In all other respects, the motion to overrule objections is **GRANTED**. McElhinney shall produce to

---

[4] Turner also claims that his information is privileged under FLA. STAT. ¶ 90.5055, but the Court does not need to reach this argument (Doc. 61 at 7).

Metlife, within fifteen days, the documents responsive to Metlife's subpoena, as limited by this Order.

**DONE** and **ORDERED** in Orlando, Florida on April 5, 2018.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Counsel of Record
    Unrepresented Parties
    Leslie A. McElhinney, CPA, PA