**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**CASE NO.: 6:17-cv-00714-PGB-TBS**

LORI COSTA,

    Plaintiff,

v.

METROPOLITAN LIFE INSURANCE
COMPANY,

    Defendant.

_____/

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S**

**MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 69)**

In what can best be described as a "preemptive strike" designed to overcome fatal flaws in her "total disability" claim under the terms of her Metropolitan Life Insurance Company ("MetLife") disability insurance policy (the "Policy"), Plaintiff Lori Costa ("Plaintiff" or "Costa"), through her Motion for Partial Summary Judgment (the "Motion") (Doc. 69), seeks to have this Court drastically rewrite the clear and unambiguous language of the Policy to greatly expand its coverage. Rather than setting forth a true "ambiguity" in need of a definition, Plaintiff's Motion seeks to alter the Policy's language in order to overcome the fact that, despite consulting with her treating physicians for over three (3) years, they have yet to diagnose her with a disabling medical condition that satisfies the existing definitions in her Policy. Because

Costa has failed to demonstrate that the word "sickness" is ambiguous, the "additional" definitions Plaintiff seeks to inject into the Policy[1] should be rejected and the Motion denied.

## STATEMENT OF DISPUTED FACTS

1. MetLife disputes Plaintiff's "Undisputed Fact" no. 2, where Costa states that "the Disability Income Policy (the policy) attached as Exhibit A to the Complaint was drafted entirely by MetLife." (Motion at 2). This is incorrect, as Florida law highly regulates the contents of disability insurance policies, including mandating the inclusion of specific policy terms. *See,* Fla. Stat. §§ 627.601, et seq. (2018). Further, no insurance policy may be delivered or issued for delivery in Florida unless approved by the State of Florida. Fla. Stat. §627.410(1). Accordingly, Plaintiff's attempt to describe the Policy at issue as a "contract of adhesion" is not accurate.

## STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS

1. The Policy provides in pertinent part:

   **Total Disability or Totally Disabled** means that due solely to Impairment caused by Injury or Sickness, You are:

   1. Before the end of the Regular Occupation period shown on page 3:

      a. Prevented from performing the material and substantial duties of Your Regular Occupation;
      b. Not Gainfully Employed – however, this requirement applies only after You have been Totally Disabled for 12 months; and
      c. Receiving appropriate care from a Physician who is appropriate to treat the condition causing the Impairment.

(Doc. 1-1, p. 24).

---

[1] Specifically, Plaintiff contends the term "sickness" should be expanded to include the following terms: "'ill health; an illness; a disordered, weakened, or unsound condition,' which can be shown by symptoms, but which does not require a specific diagnosis from a medical doctor." (Motion at 9).

    **2.**  The Policy defines "Impairment" as "a loss of use or function that can be evaluated by medical means." Policy at 5.  (Doc. 1-1, p.22).

## ARGUMENT

While Plaintiff purports to set forth the "Total Disability" provision of the Policy, she omits entirely an important Policy definition relevant to this Motion, *i.e.*, the term "Impairment."[2] As stated in the Policy, in order to be considered totally disabled, the insured must be "prevented from performing the material and substantial duties of [her] Regular Occupation" due "solely to Impairment caused by Injury or Sickness." (Doc. 1-1, p. 24). "Impairment" is defined by the Policy as "a loss of use or function that can be evaluated by medical means." (Doc. 1-1, p.22). The Policy also requires that the insured be "receiving appropriate care from a Physician who is appropriate to treat the condition causing the Impairment." (Doc. 1-1, p. 24).

Plaintiff alleges she became totally disabled as a "trial attorney"[3] on September 23, 2015 as a result of "balance issues, speech [sic], coordination [sic], fatigue, and weakness" and "cognitive problems, including processing errors, slower processing, word errors, difficulty concentrating, and experiencing extreme dizziness." Complaint at ¶¶ 7, 8. In support of that claim, Costa relies upon two (2) medical providers: Dr. Patrick Madden, a neurologist, who began seeing Plaintiff in 2015, and Dr. Kelly O'Neal, a neuropsychologist who performed

---

[2]  In fact, in her Motion, Costa fails to capitalize "Impairment" the multiple times it appears in the "Total Disability" definition, although all other terms are properly capitalized. (*Cf.* Motion at 2, ¶3). Capitalized terms are those defined in the Policy.

[33]  Plaintiff's description of her occupation as that of a "trial attorney" is a matter of dispute at trial. Solely for purposes of this Motion, however, MetLife assumes *arguendo* this is an accurate descriptor for Plaintiff's Regular Occupation.

cognitive testing on Plaintiff approximately six (6) months after she stopped working at her two-person law practice. As Plaintiff testified:

> Q. Do you know if Dr. Madden believe that there are any physical problems that disable you?
> A. I don't know.
> Q. He's your primary doctor supporting your disability; correct? Is that correct or --
> A. Yeah. Him and Dr. O'Neil [sic].

(Plaintiff's August 29, 2017 deposition; p.250/lns. 12-17; excerpt attached as Exhibit "A"). Plaintiff also testified that she had stopped working because she had been advised to do so by Dr. Madden you had found "frontal processing errors." *Id.* at p.185/lns. 4-11; attached hereto as Exhibit "B".

At his May 9, 2018 deposition, however, when asked whether he had any neurologic basis for believing that Plaintiff could not perform trial work, he answered "from a neurological perspective, no." (Dr. Madden's May 9, 2018 deposition; p.155/lns. 7-11, attached as Exhibit "C"). He further stated he had found no neurological basis for any type of cognitive deficit. *Id.* at p.123/lns. 15-19, attached as Exhibit "D") Dr. Madden also testified that her physical complaints would not limit her in her occupation. *Id.* at p.115/lns. 16-22, attached as Exhibit "E". Also, Dr. Madden made clear that, it was Costa, not he, that stated she could not do trial work, to wit:

> Q. And why – first of all, how much trial work did Ms. Costa do?
> A. Oh, I don't know exactly.
> Q. Okay. Do you know if she ever tried a case by herself?
> A. Not a clue.
> Q. ….So you don't know anything about her work duties; fair to say?
> A. Well said.
> Q. Okay. And you have no personal knowledge of her other than what you see when she comes into your office; is that fair –
> A. Correct.
> Q. -- to say? Personal knowledge.
> A. Correct, correct.

| | | |
|---|---|---|
| Q. | | So she was telling you she couldn't do trial work; is that fair to say? |
| A. | | Correct. |
| Q. | | And you were saying okay. |
| A. | | Well, to be fair, yes, because you have to give someone the benefit of the doubt, but it didn't mean forever. I was going to see her in a few weeks, right. |
| Q. | | Okay. And so I take it she asked you to write that [she could not do trial work]. |
| A. | | Yes. |
| Q. | | All right. And you really didn't have an opinion as to whether she could do office attorney work or in-house counsel work or – |
| A. | | No, that would be at the level of a functional capacity issue. You have to see a doctor for that specifically. |
| Q. | | So basically with a doctor/patient relationship she came in, she was having problems, she said, listen, I need a note that I can't do trial work, will you sign it? |
| A. | | Correct. |

*Id.* at p.75/ln. 5 to p. 76/ln. 16; attached as Exhibit "F".

Dr. O'Neal, Plaintiff's neuropsychologist, was similarly unhelpful to Costa's position in this lawsuit. Similar to Costa's testimony regarding Dr. Madden, she testified that, after his exam, Dr. O'Neal told her she "cannot practice law at this time." (Plaintiff's deposition p.98/lns.10-18; attached as Exhibit "G". And, like Dr. Madden, Dr. O'Neal directly contradicted Plaintiff's testimony:

| | | |
|---|---|---|
| Q. | | Did you tell her that she couldn't work as a trial attorney? |
| A. | | No. |
| Q. | | It's true, though, that she told you she didn't feel capable to work as a trial attorney; is that fair? |
| A. | | That is a fair statement, yes. |

(Dr. O'Neal's May 10, 2018 deposition p.104/lns 10-15; attached as Exhibit "H".)

While Dr. O'Neal did submit an expert report initially opining that his testing in ____, 2016, six (6) months after Plaintiff stopped work, showed "cognitive weaknesses" that interfered with her ability to perform her occupation, at deposition he admitted that it was "probable" that "the scores that appear to be significant departures from premorbid function are in fact nothing [more] than just relative lifelong weaknesses that she's always had." *Id.* at p.88/lns.19-23; attached as Exhibit "I". He also admitted he had no way to opine if Costa currently was

impaired as an attorney, as he had no means to compare her pre- and postmorbid functioning because he did not have a baseline with which to perform the comparison:

> Q. But you don't know where [her premorbid functioning] falls?
> A. I have no idea where it falls.  It could have been in the borderline or impaired range for all I know.
> Q. Premorbid?
> A. Premorbid.  It could have been in the superior range too.  I don't know.

*Id.* at p.82/lns.20-25; attached as Exhibit "J".

With this factual background, Plaintiff's motivation behind her attempt to expand the coverage terms of the Policy is obvious.  She is aware that, in order to recover benefits, she must prove the existence of an "Impairment," *i.e.*, "a loss of use or function <u>that can be evaluated by medical means.</u>"  Her medical evidence, however, is non-existent, as her own treating physicians, as set forth above, are not able to offer any "medical" basis for her purported inability to work as a trial attorney – only her subjective belief that she is unable to do so.  The Policy language, however, does not cover conditions that cannot be evaluated by "medical means."

That being the case, Plaintiff is attempting to add terms to the Policy that suggest she can be found "totally disabled" even without a condition that can be "evaluated by medical means." That is why she suggests the addition of vague terms such as "a disordered condition," "a weakened condition", and an "unsound condition" rather than simply presenting the jury with the language of the Policy and having it decide whether she has a "sickness," a common term understood by all, as set forth in the Policy.  Rather than providing clarity, her suggested terms simply muddy the waters (for example, what is an "unsound condition"?).  It is her suggested additional language that is ambiguous, not the term "sickness."  Accordingly, it should not be added to the Policy language, as it will simply sow confusion in the mind of the jurors.

A nearly identical definition of "Total Disability" was found <u>not</u> to be ambiguous in *Ames v. Provident Life & Accident Ins. Co.*, 942 F.Supp. 551 (S.D. Fla. 1994). As stated in *Ames*:

> The policy defines total disability as follows: "due to Injuries or Sickness ... you are not able to perform the substantial and material duties of your occupation," and adds, "[y]our ability to work will not matter." (Complaint, Exhibit A). **Because the policy plainly and simply defined total disability, there was no need for extraneous and potentially confusing descriptions or definitions derived from case law.**

*Id.* at 557 (bolded emphasis supplied). Costa's Policy, like the one in Ames, "plainly and simply" defines "Total Disability". Moreover, Costa's additional suggested terms are "extraneous and potentially confusing." Accordingly, the Policy should be applied as written.

Further, Plaintiff's attempt to "expand" the Policy language to suit her needs is based upon a "straw man" argument. MetLife did not deny Plaintiff's claim because she did not have a "definitive diagnosis." Rather, MetLife, after having her examined by a board-certified neuropsychologist, Dr. Rodney Vanderploeg, found she was not cognitively impaired and, in agreement with Costa's own neurologist, Dr. Madden, her physical complaints did not limit her in her occupation. MetLife readily concedes the term "diagnosis" is nowhere to be found in the Policy, the terms of which govern the dispute between the parties. In fact, MetLife's reliance on the terms of the Policy was made apparent at the deposition of Sean White, MetLife's corporate representative on claim issues, when asked by Plaintiff about this very issue:

> Q. (by Mr. Tucker) Do you know if the policy that Ms. Costa purchased from MetLife requires a diagnosis to be declared disabled?
> A. I can speak, or I can read the policy for you, what it states, in order to be required [sic] totally disabled.
> Q. I asked if you knew if it required a diagnosis. Do you know?
> A. The policy requires a sickness – requires the claimant, due solely to a sickness or injury, an impairment caused by sickness or injury, is what the policy states.

> Q. Does sickness or injury – do the definitions of those terms include the word diagnosis in the policy?
>
> Mr. Meagher: Objection. The policy speaks for itself. You can answer.
>
> A. I would have to view the policy. I can read it.
> Q. So you don't know as we're sitting here; you would have to look at the policy?
> A. To see if it states diagnosis exactly.

(Sean White November 30, 2017 deposition, p.124/ln.12 to p. 125/ln.10; attached hereto as Exhibit "K"). Obviously, the lack of a diagnosis is relevant to Plaintiff's claim – it supports MetLife's position that Costa's claim is not compensable because she does not have a disabling sickness or an Impairment that can be evaluated by medical means. Plaintiff should not be permitted, however, to use the existence of that issue to suggest that, because she lacks proof of an Impairment, the Policy language should be altered to better her chances at trial.

Nor do Plaintiff's cases provide her any support, as the context of those cases is entirely different from that here. None of Plaintiff's cited cases deal with the threshold question before this Court, namely, whether Plaintiff has an "impairment caused by a sickness."[4] Rather, Plaintiff's cases deal with <u>when</u> the insured's sickness "first manifested" for purposes of determining whether a pre-existing condition existed or not. *See, e.g., Contintal Cas. Co. v. Gold*, 194 So.2d 272, 273 (Fla. 1967) ( "The sole issue at trial was whether plaintiff Evelyn Gold's sickness commenced thirty days or more subsequent to the effective date of the policy.") (Motion at 4-5); *Preferred Risk Life Ins. Co. v. Sande*, 421 So.2d 566, 568 (Fla. 5th DCA 1982) (holding that a condition "manifests" upon the appearance of symptoms, as defined in the subject insurance policy)(Motion at 7-8). There is no such "timing" issue presented in this case. Nor is

---

[4] Of course, this is just the threshold question. Should Plaintiff satisfy those Policy requirements, she still must prove that the impairment prevents her from performing the material and substantial duties of her regular occupation and that she is receiving appropriate treatment for her malady.

this a case seeking to determine whether the cause of an insured's disability is the result of a sickness or an accident, which requires examination of those terms. Rather, the question here is whether Plaintiff has any sickness or Impairment at all. Plaintiff has failed to present any case law on point.

## CONCLUSION

The term "sickness" as used in the Policy is not ambiguous, as Plaintiff has failed to present two (2) reasonable definitions, one of which provides coverage while the other does not. In the absence of an ambiguity, the Court should not add "extraneous and potentially confusing terms" to the Policy's clear language. In making her argument, Plaintiff has erected a "straw man," implying that MetLife has not accepted Plaintiff's claim because of the lack of a "definitive diagnosis." That is simply not the case and Plaintiff has presented no evidence to the contrary.[5] Rather, Plaintiff is (understandably) concerned about the fact that her own doctors contradict her claim that they directed her to stop working and, further, have been unable to find any medical reason for her claimed inability to work – a condition precedent to recovering under the Policy. Accordingly, she is now improperly attempting to expand the Policy's clear and unambiguous language to add vague, undefinable terms in order to avoid this gap in her proof and improve her chances of success at trial.

Further, while correctly stating that "courts must construe an insurance contract in its entirety, striving to give every provision meaning and effect" (Motion at 3), Plaintiff fails to deal with (or even mention) the definition of "Impairment," which requires a "loss of use or function

---

[5] To be clear, even if Plaintiff's physicians had been able to identify and identify a diagnosis for Costa, that does not mean that Costa would be considered disabled under the terms of the Policy and entitled to benefits. *See e.g., Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 880 (9th Cir. 2004) ("That a person has a true medical diagnosis does not by itself establish disability.").

that can be evaluated by medical means." Plaintiff's proffered additional language conflicts with this language, as she would have the case decided simply on her subjective symptoms without such medical evidence. Accordingly, the addition of that language would sow confusion in the jury's mind and entirely corrupt the existing Policy language.

For the above-stated reasons, Plaintiff's motion for partial summary judgment should be denied.

Respectfully submitted,

**SHUTTS & BOWEN LLP**
*Attorneys for MetLife*
200 South Biscayne Boulevard
Suite 4100
Miami, Florida 33131
Tel: (305) 358-6300
Fax: (305) 381-9982

By: */s/ John E. Meagher*
John E. Meagher
Florida Bar No. 511099
*jmeagher@shutts.com*
Jeffrey M. Landau
Florida Bar No. 863777
*jlandau@shutts.com*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 16th, 2018, the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ John E. Meagher*
John E. Meagher

## **SERVICE LIST**

*Lori Costa v. Metropolitan Life Insurance Company*
**United States District Court, Middle District of Florida**
**Orlando Division**
*Case No.: 6:17-cv-00714-GKS-TBS*

John V. Tucker, Esq.
Tucker & Ludin, P.A.
5235 16th Street North
St. Petersburg, FL 33703
T: (727) 572-5000
F: (727) 571-1415
*Tucker@Tuckerludin.com*
*Dana@Tuckerludin.com*
*Demas@Tuckerludin.com*
  Attorneys for Plaintiff